UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-9587-GW-JPRx | Date | April 24, 2020 |
|---|---|---|---|
| Title | *Brian Armstrong v. WB Studio Enterprises, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - RULING ON PLAINTIFF'S MOTION TO REMAND [16]

The Court finds that need not hear oral argument on this continuation of the hearing on the motion to remand; and the April 27, 2020 hearing is taken off-calendar. See C.D. Cal. L.R. 7-15.

Based on the foregoing discussion, the Court would DENY Plaintiff's Motion to Remand.

: 

Initials of Preparer    JG

*Brian Armstrong v. WB Studio Enterprises, Inc., et al.*; Case No. 2:19-cv-09587-GW-(JPRx)
Ruling on Motion to Remand

## I. Background

Plaintiff Brian Armstrong sues Defendants WB Studio Enterprises, Inc.; Warner Bros. Entertainment Inc. (collectively, "WBTV"); Warner Media, LLC; Chuck Lorre Productions, Inc.; and Does 1-20 for: (1) harassment, in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov Code § 12900 *et seq.*; (2) failure to prevent harassment, in violation of FEHA; (3) discrimination, in violation of FEHA; (4) failure to prevent discrimination, in violation of FEHA; (5) retaliation, in violation of FEHA; (6) violation of Cal. Labor Code § 1102.5; and (7) violation of Cal. Labor Code § 6310.  *See generally* First Amended Complaint ("FAC"), Docket No. 25.

Plaintiff alleges the following: Plaintiff is a 61-year-old Caucasian Christian male who works as a camera operator for television shows.  *Id.* ¶¶ 6-7.  Plaintiff has over forty years of experience in the television production industry, and he spent over eighteen years working as a camera operator for Defendants.  *Id.*  Most recently, Defendants employed Plaintiff as a camera operator for the television show "The Big Bang Theory."  *Id.* ¶ 8.  Plaintiff performed excellent camera work throughout his employment.  *Id.* ¶ 9.

During Plaintiff's employment with Defendants, Defendants' producers, cast, and crew subjected him to slurs, tropes, stereotypes, and hate speech made against people who are older, white, male, and Christian, such as Plaintiff.  *Id.* ¶ 10.  Defendants' producers, managers, supervisors, and executives were aware of these issues but failed to prevent or correct them.  *Id.* ¶ 11.  In 2019, one of Defendants' employees put Plaintiff in a chokehold because Plaintiff had inadvertently interrupted an apparent prostitution purchase for one of Defendants' actors.  *Id.* ¶ 13.  Plaintiff complained to Defendants' production management and human resources about the event.  *Id.* ¶ 14.

Plaintiff's employment with Defendants ended when "The Big Bang Theory" was canceled and production stopped.  *Id.* ¶ 15.  Plaintiff applied to work as a camera operator on a new show Defendants were creating, "Bob Hearts Abishola."[1]  *Id.* ¶ 16.  Defendants' manager told Plaintiff

---

[1] Plaintiff refers to the show as "Bob Loves Abishola," (*see* FAC ¶ 16), but it appears to actually be named "Bob

1

that he could not be hired for "Bob Hearts Abishola" due solely to Plaintiff's race, color, and gender (Caucasian, white, male). *Id.* ¶ 17. Defendants' executive producer ordered the employees responsible for hiring crew not to hire "white" and "male" crew members. *Id.* ¶ 18. Defendants' manager and the employees conducting hiring for "Bob Hearts Abishola" were aware that Plaintiff had complained about the 2019 chokehold incident. *Id.* ¶ 19. Defendants' manager and employees in charge of hiring also knew that Defendants' employees had made slurs, tropes, stereotypes, and hate speech against people who are older, white, male, and Christian. *Id.* Defendants' employees decided not to hire Plaintiff for "Bob Hearts Abishola" within a few months of Plaintiff's complaints. *Id.* ¶ 20. When Plaintiff opposed Defendants' failure to hire him, Defendants' human resources manager told Plaintiff that he would never work again. *Id.* ¶ 22. The individual Defendants hired for the position Plaintiff had applied to was younger than Plaintiff; was not male, Caucasian, or white; and had not previously lodged complaints about battery or FEHA violations. *Id.* ¶ 23. Defendants did not hire other older white men for "Bob Hearts Abishola." *Id.* ¶ 24. Further, Defendants still have not hired Plaintiff since "The Big Bang Theory" ended. *Id.* ¶ 25. Plaintiff filed a charge with the Department of Fair Employment and Housing and received a right-to-sue regarding the alleged discrimination, harassment, and retaliation. *Id.* ¶ 27.

Plaintiff brought suit in the Los Angeles Superior Court, and Defendants removed to this Court.[2] *See* Notice of Removal, Docket No. 1. Plaintiff filed the present Motion to Remand. *See* Motion to Remand ("Motion"), Docket No. 16. Defendants opposed. *See* Opposition to Motion to Remand ("Opp'n"), Docket No. 17. Plaintiff replied. *See* Reply in Support of Motion to Remand ("Reply"), Docket No. 18. The Court heard a hearing on the Motion, at which it allowed Plaintiff to file an amended complaint, because the original complaint was deficiently pled. *See* Transcript of Proceedings Held on 3/9/2020, Docket No. 23. After Plaintiff filed the FAC, Defendants filed a supplemental brief opposing remand. *See* Supplemental Memorandum in Support of Preemption ("Def. Supp."), Docket No. 28. Plaintiff filed a supplemental brief in support of remand. *See* Plaintiff's Opposition to Defendant's Memorandum ("Pl. Supp."), Docket No. 30.

---

Hearts Abishola" (*see* Declaration of Silisha S. Platon ¶ 2, Docket No. 17-1).

[2] Defendants asserted that there was federal question jurisdiction because "this action is preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 141 et seq., because it requires the interpretation of one or more collective bargaining agreements governing the terms and conditions of Plaintiff's employment." *See* Docket No. 1 at 2 of 18.

2

## II. Legal Standard

Federal courts possess limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congressional statute. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Federal courts operate under the presumption that they do not have jurisdiction over state causes of action, and the party claiming federal jurisdiction must prove otherwise. *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)). Additionally, "[t]he defendant bears the burden of establishing that removal is proper" and removal statutes are "strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("[J]urisdiction must be rejected if there is any doubt as to the right of removal.").

Generally speaking, "the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The mere existence of a potential defense based on state law is generally insufficient to confer removal jurisdiction. *Id.* Therefore, "[t]he rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*. However, there is an exception, known as the "complete preemption doctrine," which applies where "the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id*. (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has explained, the "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). Additionally, the Supreme Court has instructed that "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims

3

'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 393 (quoting *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)); *see also Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456 (1957) (noting that § 301 was a congressional directive to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211-12 (1985) (quoting *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 224-25 (1983)) ("If the policies that animate § 301 are to be given their proper range . . . [they] require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.'"). Thus, suits between individuals and their employers sometimes implicate LMRA preemption when a CBA is involved. Once preempted, "any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

In *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007), the Ninth Circuit distilled the history and preemptive scope of § 301. The Court formulated two lines of inquiry to assess whether a defendant can establish complete preemption under the LMRA. The first is an "inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id*. (emphasis added); *see Lueck*, 471 U.S. at 212 (holding that § 301 cannot "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract"); *Caterpillar*, 482 U.S. at 394 (concluding that § 301 only "governs claims founded directly on rights created by collective-bargaining agreements"). "[T]o determine whether a particular right inheres in state law or, instead, is grounded in a CBA, the Court has instructed us to consider the legal character of a claim, as independent of rights under the collective-bargaining agreement [and] not whether a grievance arising from precisely the same set of facts could be pursued." *Burnside*, 491 F.3d at 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)) (internal quotations and emphasis omitted). In addition, the Supreme Court has clearly stated that "reliance on the CBA as an aspect of a defense is not enough to 'inject[ ] a federal question into an action that asserts what is plainly a state-law claim.'" *Id*. (emphasis added) (citing *Caterpillar*, 482 U.S. at 398-99).

The *Burnside* Court then identified the second line of inquiry: "[i]f, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially

4

dependent on analysis of a collective-bargaining agreement.'" *Id*. (emphasis added) (citing *Caterpillar*, 482 U.S. at 394 (quoting *Hechler*, 481 U.S. at 859 n.3 (1987)))). "[T]o determine whether a state law right is 'substantially dependent' on the terms of a CBA . . . the Court directs us to decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id*. (internal citations omitted). The former does not provide a basis for complete preemption. *See Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). Along these same lines, merely "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Cramer v. Consol. Freightways, Inc*., 255 F.3d 683, 691 (9th Cir. 2001).

### III. Discussion

Plaintiff sued Defendants for: (1) harassment in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov Code § 12900 et seq.; (2) failure to prevent harassment, in violation of FEHA; (3) discrimination, in violation of FEHA; (4) failure to prevent discrimination, in violation of FEHA; (5) retaliation, in violation of FEHA; (6) violation of Cal. Labor Code § 1102.5; and (7) violation of Cal. Labor Code § 6310. *See generally* FAC. These are state law claims not explicitly invoking the CBAs. *See* Motion at 6. Therefore, the question before the Court is whether Plaintiff's claims are dependent on interpretation of a CBA. *See Firestone v. S. Cal. Gas Co.*, 281 F.3d 801, 802 (9th Cir. 2002) ("[A] state law claim is preempted if it necessarily requires the court to interpret an existing provision of a collective bargaining agreement . . . that can reasonably be said to be relevant to the resolution of the dispute. A claim that requires only reference to the collective bargaining agreement, but no interpretation, is not preempted." (internal quotations and citation omitted)).

"The Ninth Circuit has 'consistently held that state law discrimination claims under the FEHA do not require courts to interpret the terms of a CBA and are therefore not preempted by § 301.'" *Klausen v. Warner Bros. TV*, 158 F. Supp. 3d 925, 930 (C.D. Cal. 2016) (quoting *Ackerman v. W. Elec. Co*., 860 F.2d 1514, 1517 (9th Cir. 1988)); *see also Humble v. Boeing Co*., 305 F.3d 1004, 1010 (9th Cir. 2002) ("[A] CBA provision does not trigger preemption of a reasonable accommodation claim when it is only *potentially* relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur." (emphasis in original)); *Chmiel v. Beverly Wilshire Hotel Co*., 873 F.2d 1283, 1286-87 (9th Cir.

5

1989); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 240 (9th Cir. 1990); *Ramirez v. Fox Tele. Station, Inc.*, 998 F.2d 743, 748-49 (9th Cir. 1993).  However, this is not a uniform rule: courts in this Circuit have found preemption when a plaintiff's discrimination claims require interpretation of a CBA.  *See, e.g.*, *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1254 (C.D. Cal. 2000); *McGowen v. Nestle Food Co.*, No. 1:06CV01212AWIDLB, 2007 WL 173768, at *6 (E.D. Cal. Jan. 19, 2007); *Audette v. Int'l Longshoremen's & Warehousemen's Union, Local 24*, 195 F.3d 1107, 1113 (9th Cir. 1999).

Plaintiff alleges discrimination in violation of FEHA.  He bases this claim on allegations that he was subjected to slurs while employed with Defendants and that Defendants refused to rehire him based on his age, race, gender, religion, and the fact that he had previously complained of an incident involving a chokehold.  Defendants argue that these claims require interpretation of the CBAs that governed Plaintiff's employment.[3]  *See* Declaration of Silisha Platon ("Platon Decl."), Docket No. 28-1, ¶¶ 6-12.

Defendants argue that § 301 preempts Plaintiff's claim that Defendants discriminated and retaliated against him in violation of FEHA by failing to rehire him as a camera operator for "Bob Hearts Abishola."  Under the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), Plaintiff must first establish a prima facie case of discrimination and retaliation.  In order to establish a prima facie case of discrimination under California law, Plaintiff must show, *inter alia*, that he was qualified for the job he sought.  *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000).  Assuming Plaintiff can establish a prima facie case of discrimination or retaliation, the burden shifts to Defendants to offer a legitimate, nondiscriminatory reason for their failure to rehire Plaintiff.  *See McDonnell Douglas*, 411 U.S. at 802.  Finally, the burden returns to Plaintiff to show that Defendant's allegedly nondiscriminatory reason for not rehiring Plaintiff was a pretext.  *Id.* at 804.  Defendants argue that a determination of Plaintiff's qualification for the camera operator position is dependent on interpretation of various provisions of the relevant CBA.  Specifically, Defendants points to provisions of the CBA that require Defendants to give "preference of employment" to "qualified persons" listed on the Industry Experience Roster.[4]  Def. Supp. at 4.  Defendants contend that because the CBA does not

---

[3] It appears clear that not all of Plaintiff's claims would possibly fall within the preemptive scope of § 301, for example his causes of action for harassment and failure to prevent harassment.

[4] For example, the CBA states:

expressly define the terms "preference" or "qualified," the Court will have to interpret these terms in order to resolve Plaintiff's claims.

The Court would find that certain of Plaintiff's claims are substantially dependent on an analysis of the CBA.  *See Burnside*, 491 F.3d at 1059.  As Defendants point out, Plaintiff must demonstrate that he was "qualified" for the position of camera operator on "Bob Hearts Abishola" in order to prevail on his discrimination claim.  In making this determination, the Court would likely look to the sections of the CBA governing hiring and qualifications for the role of camera operator.  And because the CBA does not simply define what constitutes a "qualified" individual, the Court would need to interpret that term based on the broader language of the CBA.

Further, even if Plaintiff's prima facie case does not require interpretation of the meaning of "qualified" in the CBA, it is highly likely that Defendant's purported non-discriminatory reasons for failing to rehire Plaintiff, under the *McDonnell Douglas* burden-shifting framework, will require interpretation of whether Plaintiff was "qualified" under the terms of the CBA.  For example, Defendants might argue that despite Plaintiff's industry experience, he was not rehired because he was not a "qualified person" according to the standards laid out in the CBA.  A Defendant's reliance on a nondiscriminatory justification requiring interpretation of a CBA under the burden-shifting framework is relevant to preemption.  *See, e.g., Audette*, 195 F.3d at 1113 ("Resolution of the [state] discrimination and retaliation claim turns on defendants' offer of a 'legitimate nondiscriminatory reason' requiring interpretation of the collective bargaining agreement . . . . Accordingly, this claim is preempted."); *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 407 (1988) (considering both prima facie elements of plaintiff's retaliation claim and potential nonretaliatory justifications for the discharge to determine if the required interpretation

---

Such preference of employment in hiring and rehiring shall be given by Producer within each such respective related job classifications grouping to the available qualified persons who are from such related job classifications, in the following order: First, preference of employment shall be given to such available qualified persons who are in Industry Group 1; in the event there are insufficient available qualified persons in Industry Group 1 to meet the employment requirements of Producer in such respective related job classifications, then Producer may secure employees from any source.

. . . .

Unless otherwise provided in this Agreement, each qualified person listed on the Industry Experience Roster in any respective related job classifications grouping shall have preference of employment in such respective related job classifications grouping, as above provided, equal to all other qualified persons listed on the Industry Experience Roster in such related job classifications grouping and the Producer shall have complete freedom of selection from among such persons for the purpose of hiring, layoff and rehiring

Def. Supp. at 5.

7

of the CBA).

In this way, this case is similar to *Madison*, another case finding § 301 preemption of state law discrimination claims. *See Madison*, 132 F. Supp. 2d 1244. In *Madison*, the plaintiff sued his union for racial discrimination after his union filed a grievance against his employer that reflected poorly on him. *Id.* at 1253. In finding that this claim required interpretation of the CBA, the Court explained:

> Arguably, Madison's prima facie case will require resort to the CBA, since he appears to assert that the Union handled the grievance against Paramount differently than it handled other such grievances, and proof of this fact may necessitate determining whether the CBA imposed an obligation on the Union to notify interested members before proceeding with such a claim. Even if this is not the case, it is almost certain that the Union's articulated non-discriminatory reason for the action it took will require resort to the CBA.
>
> First, since the Union's grievance concerned the employment of non-union members as set painters, CBA requirements that only Union members be hired will be implicated. Additionally, since Madison alleges that the Union's grievance was discriminatory in part because it was issued, contrary to standard practice, without alerting him first, the Union will undoubtedly assert that it complied with the procedures set forth in the CBA for filing grievances against an employer. Consequently, the claim is preempted.

*Id.* at 1253-54. Here, as in *Madison*, Plaintiff's prima facie discrimination claim will likely "require resort to the CBA," and even if it does not, "it is almost certain that [Defendants'] articulated non-discriminatory reason for the action it took will require resort to the CBA." *Id.* Once Defendants put forward Plaintiff's lack of qualification under the CBA as a nondiscriminatory justification for not rehiring Plaintiff, the Court will need to interpret the terms of the CBA to determine what it actually means when it dictates that "preference of employment" will be given to "qualified persons." As such, the Court would find that resolution of Plaintiff's failure to rehire discrimination claim requires interpretation of the CBA, and Plaintiff's claim is preempted. The Court need not determine whether § 301 preempts Plaintiff's remaining claims: to the extent Plaintiff's remaining claims are not preempted, the Court would at this time exercise supplemental jurisdiction over those as well.

### IV.  Conclusion

The Court finds that need not hear oral argument on this continuation of the hearing on the motion to remand; and the April 27, 2020 hearing is taken off-calendar. *See* C.D. Cal. L.R. 7-15.

Based on the foregoing discussion, the Court would **DENY** Plaintiff's Motion to Remand.